UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CONNIE E. HARROLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-83-HSM-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Connie Harrold ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff has moved for judgment on the pleadings [Doc. 15] and has filed a memorandum in support [Doc. 16]. Defendant has moved for summary judgment [Doc. 19] and has filed a memorandum in support [Doc. 20]. This matter is now ripe. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 15] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 19] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

I.  **ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her current applications for DIB and SSI on August 16, 2012, alleging disability as of August 14, 2008 (Transcript [Doc. 11] ("Tr.") 46, 58). Plaintiff's claims were denied initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge (Tr. 57, 69, 101, 112, 115, 117). ALJ Michael R. Swan ("the ALJ") held a hearing on December 12, 2013, during which Plaintiff was represented by an attorney (Tr. 24). The ALJ

issued a decision on December 18, 2013, in which he determined Plaintiff was not disabled because she was capable of making a successful adjustment to other work that existed in significant numbers in the national economy (Tr. 10-19). Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision on January 6, 2014 (Tr. 5-6). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff filed this action on March 17, 2014 [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was 47 years old on the alleged onset date (Tr. 17) and 53 years old at the time of her hearing before the ALJ and his unfavorable decision (Tr. 15). Plaintiff has a high school education with one year of clerical classes at a community college and is able to communicate in English (Tr. 17, 296). Plaintiff has past relevant work as a cashier or a clerk in a convenience store and in clerical jobs (Tr. 17, 292, 296). Plaintiff stopped working most recently when the store where she was employed closed (Tr. 182, 292, 296).

### B. Medical Records

Plaintiff's arguments focus on whether the ALJ gave sufficient weight to the functional restrictions in the report of consultative examiner Thomas F. Mullady, M.D. ("Dr. Mullady") and on the ALJ's consideration of Plaintiff's credibility. Only the portions of Plaintiff's medical records relevant to the parties' arguments will be summarized here, but all relevant records have been reviewed.

#### 1. Plaintiff's Pre-Onset Medical Records

Plaintiff alleges her leg impairments resulted from a motor vehicle accident in 1997 and several related surgeries (Tr. 29, 292). The administrative record does not contain any medical

2

Case 1:14-cv-00083-HSM-SKL   Document 21   Filed 07/29/15   Page 2 of 17   PageID #: 456

records from the accident itself, but a 2003 x-ray of Plaintiff's right foot did show a surgical plate and screws in the hindfoot, as well as triple arthrodesis[1] of the hindfoot (Tr. 15, 331).

In November 2007, Plaintiff visited the emergency room after falling and injuring her face and left knee (Tr. 236-77). She reported pain and swelling in her face, soreness in her ribs, and pain in her knees, but no neck or back pain (Tr. 244). In a physical examination, Plaintiff had no motor or sensory deficits, no tenderness to palpation of her back, and mild tenderness in her knees (Tr. 245). X-rays of Plaintiff's knees showed intact metallic fixators on the left and a non-acute possible narrow infiltrative process on the right (Tr. 247-48, 271-72). A follow-up x-ray of the left knee on November 21, 2007 showed joint effusion without significant changes from the previous study (Tr. 282).

### 2. Dr. Mullady

Dr. Mullady performed a consultative examination of Plaintiff on November 16, 2012 (Tr. 292-94). He noted Plaintiff's reported history of multiple surgeries for leg fractures from a vehicle accident in 1997 and her reports of continued leg pain (Tr. 292-93). Plaintiff reported taking no medications and drinking eight cans of beer per day (Tr. 293).

Dr. Mullady observed a ten degree flexion contracture[2] of Plaintiff's right elbow and complete ankylosis[3] of her right ankle, with range of motion in all other joints within normal limits (*id.*). He observed normal muscle strength in all extremities, normal grip strength, and normal dexterity (*id.*). He observed a slight right leg limp and found upon measurement that Plaintiff's right leg was "one-half [sic] shorter" than her left leg (Tr. 293-94). He noted Plaintiff did not use an assistive device to walk (Tr. 294). He noted an absence of deep tendon reflexes in

---

[1] Arthrodesis is also known as surgical joint fusion.

[2] A contracture is a shortening or distortion of muscle or connective tissue.

[3] Ankylosis is stiffening or immobility of a joint.

3

both of Plaintiff's legs, with no sensory deficits and normal balance (*id.*). He found her to have 20/40 vision in both eyes, which he described as a mild decrease in visual acuity (Tr. 293-94).

Dr. Mullady diagnosed Plaintiff with a history of multiple fractures and decreased visual acuity (*id.*). He opined Plaintiff had the capacity during an eight-hour workday to occasionally lift or carry a maximum of ten pounds for up to one third of the time; frequently lift or carry a maximum of ten pounds for one third to two thirds of the time;[4] stand or walk with normal breaks for about two hours; and sit with normal breaks for at least six hours (*id.*).

### 3. Dr. Wheeler

Janice Wheeler, Ph.D. ("Dr. Wheeler") performed a psychological consultative examination of Plaintiff on November 20, 2012 (Tr. 295-300). Dr. Wheeler diagnosed Plaintiff as having Depressive Disorder NOS, Alcohol Dependence, Nicotine Dependence, pain in her right ankle and left knee, and seasonal allergies (Tr. 299). She opined that Plaintiff's work-related activities were moderately limited in the ability to understand and remember, in concentration and persistence, and in social interaction, and significantly limited in adaptability (*id.*). She found Plaintiff's potential for successful employment was "very guarded due to her alcohol dependence" (Tr. 300).

### 4. Non-Examining State Agency Medical Consultants

On November 30, 2012, a non-examining state agency medical consultant, Charles Settle, M.D. ("Dr. Settle"), reviewed the record and found Plaintiff could stand or walk with normal breaks for about six hours in an eight-hour workday (Tr. 308, 310). Dr. Settle also found Plaintiff could lift and carry up to 20 pounds occasionally and ten pounds frequently (*id.*).

---

[4] Dr. Mullady's report does not explain why he stated two different frequencies with the same ten-pound weight limit.

4

On March 8, 2013, a second non-examining state agency medical consultant, P. Stumb, M.D. ("Dr. Stumb"), reviewed the record and also found Plaintiff could stand or walk with normal breaks for about six hours in an eight-hour workday and lift and carry up to 20 pounds occasionally and ten pounds frequently (Tr. 339, 341).

### C. Hearing Testimony

At the hearing on December 12, 2013, Plaintiff and a vocational expert, Rodney Caldwell (the "VE"), testified (Tr. 24). I have carefully reviewed the transcript of the testimony at the hearing, but only the portions of the hearing relevant to the parties' arguments will be addressed within the respective sections of the analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

5

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002)).

### B. The ALJ's Findings

In the ALJ's decision dated December 18, 2013, he made the following findings. At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since August 14, 2008, the alleged onset date (Tr. 12). At step two, the ALJ found Plaintiff had the following severe impairments: history of multiple fractures, disorder of the bilateral lower extremities, depressive disorder, and drug and alcohol dependence, which was reportedly in remission at the time of the hearing (Tr. 12). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 13). The

ALJ specifically considered Listings 12.04 and 12.09, and further considered the paragraph B and paragraph C criteria of the mental disorders listings (Tr. 13-14). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform

> light work . . . except claimant would be able to stand and/or walk for up to four hours; the claimant would be able to perform occasional postural activity; the claimant would never be able to work with ladders/ropes/scaffolds or dangerous machinery; limited to frequent handling/fingering; the claimant would also need a thirty minute sit/stand option; the claimant would need to avoid pulmonary irritants such as fumes, dusts, and gases; the claimant would be able to understand, remember and carry out simple instructions and can make work related judgments typically required for unskilled work; the claimant can respond appropriately to supervision, coworkers and work situations; the claimant would also be able to have contact with the general public on a rare basis and with supervisors and coworkers on an occasional basis and can deal with charges in a routine work setting on an infrequent basis.

(Tr. 14). At step four, the ALJ found Plaintiff was unable to perform any of her past relevant work (Tr. 17). At step five, the ALJ noted that Plaintiff was an individual closely approaching advanced age on the alleged onset date, had at least a high school education, and was able to communicate in English (Tr. 17). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 17-18). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from August 14, 2008, the alleged onset date, through December 18, 2013, the date of the decision (Tr. 18-19).

## IV. ANALYSIS

Plaintiff alleges the ALJ erred by giving less weight to the opinion of Dr. Mullady than to the opinions of the non-examining state agency medical consultants, by improperly evaluating Plaintiff's credibility, and by failing to consider that Plaintiff changed age categories between the

7

alleged date of onset and the hearing. Defendant argues that substantial evidence supports the ALJ's decision, both as to the weight the ALJ gave Dr. Mullady's opinion and as to his evaluation of Plaintiff's credibility. Defendant also argues that substantial evidence supports the ALJ's finding that Plaintiff could perform other work that exists in significant numbers in the national economy.

A.  **Standard of Review**

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996); *see also Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387 (citing *Myers v. Richardson*, 471 F.2d 1265, 1267-68 (6th Cir. 1972)). The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (noting that conclusory claims of error without further argument or authority may be considered waived) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

### B. The ALJ's Consideration of Dr. Mullady's Opinion

Plaintiff argues that the ALJ did not give enough weight to the opinion of Dr. Mullady in determining Plaintiff's RFC. Specifically, Plaintiff argues that Dr. Mullady was a "State Agency Medical Consultant" whose opinion had to be addressed under the standards set out in Social Security Ruling ("SSR") 96-6p [Doc. 16 at Page ID # 422]. Plaintiff further argues that because Dr. Mullady actually examined Plaintiff, his opinion was entitled to greater weight than the opinions of the non-examining state agency consultants. In response, Defendant argues that non-treating, examining sources such as Dr. Mullady are not entitled to any special degree of deference. Defendant also argues that the ALJ gave sufficient reasons for placing less weight on Dr. Mullady's opinion.

Although Plaintiff calls Dr. Mullady a state agency medical consultant, he is actually a consultative examiner (Tr. 16) ("the claimant underwent a consultative examination given by

9

Thomas Mullady, M.D."). A consultative examination is a physical or mental examination or test of a claimant, requested by and paid for by the Social Security Administration. 20 C.F.R. § 404.1519. Dr. Mullady examined Plaintiff pursuant to a referral by an examiner in the Department of Human Services Consultative Examination Unit (Tr. 292). State agency medical consultants, by contrast, are nonexamining sources and "members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings)." SSR 96-6p, 1996 WL 374180 * 2 (July 2, 1996); s*ee also Messer v. Comm'r of Soc. Sec.*, No. 1:10-cv-545, 2011 WL 3875480, at * 13 and n.5 (S.D. Ohio Aug. 5, 2011) (recognizing distinction between a consultative examiner, "who actually performs a physical or mental examination of the claimant," and a state agency medical consultant, who does not examine the claimant). Because Dr. Mullady is not a state agency medical consultant, SSR 96-6p does not apply to his opinion.

More weight will generally be given "to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1).[5] Still, in appropriate circumstances, "opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p. For example, a reviewing source may be entitled to greater weight than a treating (or examining) source if the reviewing source has broader access to the claimant's records. *See id.*

---

[5] The case Defendant relies on to argue that an examining source is entitled to no special deference, *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994), actually held that an examining expert is not entitled to the same deference as a treating expert—not that an examining expert is entitled to no deference at all. The *Barker* court further recognized that greater weight could be given to a nonexamining expert who had more access to the plaintiff's records than to an examining expert who had no such access.

Although both Plaintiff and Defendant have misstated the consideration the ALJ was *required* to give Dr. Mullady's opinion in their arguments, Defendant correctly contends that the consideration the ALJ *actually* gave to Dr. Mullady's opinion was proper. The ALJ's consideration of Dr. Mullady's opinion also would have fully satisfied the requirements of 96-6p if they applied. The ALJ discussed Dr. Mullady's opinion, explained the weight given to it, and gave reasons supported by substantial evidence for discounting it (Tr. 16). Specifically, the ALJ noted Dr. Mullady's opinion that Plaintiff could lift and carry a maximum of ten pounds, stand and walk with normal breaks for about two hours in an eight-hour day, and sit for at least six hours in an eight-hour day (Tr. 16, 294). The ALJ found Dr. Mullady's opinions regarding lifting/carrying and walking/standing too restrictive and gave them little weight in assessing Plaintiff's RFC (Tr. 16). The ALJ explained that Dr. Mullady's restrictions "were not supported by the objective medical evidence of record or by [Dr. Mullady's] own examination" (Tr. 16).

For instance, while Dr. Mullady restricted Plaintiff to lifting and carrying only ten pounds, he also found Plaintiff to have normal muscle strength in all extremities, normal grip strength, and normal balance (Tr. 16, 293-94). The record documented no significant problems with Plaintiff's hands and arms, and a physical examination of Plaintiff's extremities in 2007 was normal (Tr. 17, 236-37). Although Plaintiff testified that she had to hold a gallon of milk with two hands, she also reported that she cared for a baby when her step-daughter was working (Tr. 32, 298). Plaintiff lifted weights of up to 50 pounds in her most recent work as a store clerk and she did not have to make any changes in her work activities because of her symptoms (Tr. 182, 197). Her most recent work ended because the store went out of business, not because she could not perform the physical requirements of the job (Tr. 182, 197). Further, the non-examining state agency medical consultants, Dr. Settle and Dr. Stumb, reviewed Plaintiff's

11

Case 1:14-cv-00083-HSM-SKL  Document 21  Filed 07/29/15  Page 11 of 17  PageID #: 465

records and found that Plaintiff could lift and carry up to 20 pounds occasionally and ten pounds frequently (Tr. 308, 339). There was therefore sufficient evidence in the record for the ALJ to discount Dr. Mullady's lifting and carrying restrictions.

Similarly, although Dr. Mullady restricted Plaintiff to standing and walking for two hours in an eight-hour day, the evidence did not support such a severe restriction (Tr. 16, 294). As the ALJ noted, diagnostic studies and physical examinations prior to Plaintiff's alleged onset date were sparse and generally unremarkable (Tr. 15, 236-82, 331). Plaintiff had no motor or sensory deficits, no tenderness to palpation of her back, and only mild tenderness in her knees (Tr. 245). Likewise, Dr. Mullady's November 2012 examination report showed complete stiffness in Plaintiff's right ankle, but she had normal muscle strength and balance, and she did not use an assistive device to walk (Tr. 17, 293-94). The non-examining state agency medical consultants each opined that Plaintiff could stand and walk about six hours in an eight-hour workday (Tr. 308, 339). Considering Plaintiff's testimony and other evidence in the record, the ALJ properly determined that Plaintiff was more restricted than the state agency doctors opined, but not as limited as Dr. Mullady opined. The ALJ accordingly limited Plaintiff to standing and walking for four hours in an eight-hour workday (Tr. 14-17).

Substantial evidence supported the ALJ's finding that Dr. Mullady's ten-pound lifting restriction and two-hour standing and walking restriction were inconsistent with Dr. Mullady's own examination and other evidence in the record (Tr. 14, 16). Accordingly, I **FIND** that it was not error for the ALJ to give less weight to the opinion of consultative examiner Dr. Mullady than to the opinions of the state agency consultants.

### C. The ALJ's Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in finding her statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible. Plaintiff contends the ALJ improperly discounted her credibility in part by erroneously assuming that her ability to do some housework would translate to a normal work environment. Defendant responds that the ALJ articulated valid reasons for discounting Plaintiff's allegations of disabling pain, including the medical evidence in the record, Plaintiff's treatment history, and Plaintiff's daily activities.

As relevant in this review, an ALJ must consider "the claimant's allegations of . . . symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference).

Case 1:14-cv-00083-HSM-SKL   Document 21   Filed 07/29/15   Page 13 of 17   PageID #: 467

Substantial deference to an ALJ's credibility determination has been held to mean that "[a]n [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)). The court is "'limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record.'" *Schmiedebusch*, 536 F. App'x at 649 (alterations in original) (quoting *Jones*, 336 F.3d at 476).

Here, the ALJ explained his finding that the intensity, persistence, and limiting effects of Plaintiff's symptoms were "not entirely credible" (Tr. 15-17). In explaining the reasons supporting his credibility decision, the ALJ noted Plaintiff's testimony that she cannot stand for very long and that she falls at least once a week (Tr. 15-17). He found this testimony not entirely credible, however, based on the lack of support in the medical record and based on medical evidence that Plaintiff had normal muscle strength, normal balance, and no gross joint deformities or peripheral edema, as well as the fact that Plaintiff did not require an assistive device to walk (Tr. 17, 293-94). Similarly, the ALJ noted Plaintiff's testimony that she could not hold anything for very long because something was wrong with her hands, but found this not entirely credible because nothing in the medical record supported the allegation of a problem with Plaintiff's hands, and Plaintiff's most recent physical examination showed she had normal muscle strength, normal grip strength, and normal manual dexterity (Tr. 17, 293-94).

Another example the ALJ gave to explain his reasoning on credibility was that Plaintiff had never sought any mental health treatment (Tr. 17). Elsewhere, the ALJ also noted that Plaintiff had not sought any medical treatment since her alleged onset date (Tr. 15). In considering credibility, an ALJ may consider whether the level and frequency of the claimant's

14

treatment is inconsistent with the level of the claimant's complaints. SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Contrary to Plaintiff's contention, the ALJ did not find that Plaintiff's ability to do some housework would translate to a normal work environment. Rather, the ALJ considered Plaintiff's daily activities in the context of assessing the severity of Plaintiff's claimed depression (Tr. 17). The ALJ noted that "despite the claimant's depression, the record demonstrates that she independently performs a wide range of activities of daily living" (Tr. 17). Specifically, Plaintiff reported to Dr. Wheeler that Plaintiff spent her days drinking beer,[6] doing household chores, occasionally babysitting, and taking care of two dogs (Tr. 16, 296, 298). An ALJ may consider daily activities as one factor in the evaluation of subjective complaints. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

Accordingly, I **FIND** that the ALJ's explanation for partially discrediting Plaintiff's credibility is reasonable and supported by substantial evidence in the record.

### D. The ALJ's Consideration of Plaintiff's Age

Plaintiff argues that the ALJ erred in not considering Plaintiff's change of age categories from a "younger individual (ages 18-49)" on the alleged date of onset to an individual "closely approaching advanced age (ages 50-54)" on the date of the hearing [Doc. 16 at Page ID # 431]. The ALJ noted in his decision that Plaintiff was "an individual closely approaching advanced age" (Tr. 17). Accordingly, I **FIND** no reversible error in the ALJ's consideration of Plaintiff's age.

---

[6] The ALJ also noted Plaintiff's hearing testimony that she had not abused any drugs or alcohol in over a year (Tr. 17, 28-29).

### E. The ALJ's Finding Regarding Other Work in the National Economy

Plaintiff argues that the ALJ's RFC finding was inconsistent with the definition of light work and that she is therefore disabled under Rule 201.14 of the Medical-Vocational Guidelines. Defendant argues that the ALJ appropriately relied on the testimony of the VE to determine that Plaintiff could perform jobs that existed in significant numbers in the national economy.

When a claimant's exertional limitations fall somewhere "in the middle" of two ranges of work, vocational assistance is required to assess the effect of any limitations on the range of work at issue. SSR 83-12, 1983 WL 31253 (1983); *See also Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 680 (6th Cir. 2013) (vocational expert testimony is required regarding the jobs available to an individual whose limitations do not fall squarely within either grid; so long as the hypothetical is accurate, the ALJ may rely on the vocational expert's testimony).

Here, the ALJ determined that while Plaintiff could perform the lifting and carrying requirements of light work, she was limited to a reduced range of light work due in part to a limitation to standing and walking for four hours in an eight-hour workday with a 30 minute sit/stand option (Tr. 14, 18). The ALJ appropriately obtained the testimony of the VE to help determine the extent to which Plaintiff's limitations eroded the unskilled light occupational base (Tr. 18, 40-42). The VE testified that a person with Plaintiff's vocational profile and RFC could perform light work as an assembly worker, a production inspector, and a hand packer/sorter (Tr. 18, 40-41). Based on this testimony, the ALJ found that Plaintiff could perform other work existing in the national economy and was not disabled (Tr. 17-18). The VE's testimony is substantial evidence that supports the ALJ's finding (Tr. 14, 18).

Plaintiff asserts, without further argument or citation to authority, that a review of the Dictionary of Occupational Titles shows that the jobs cited by the VE require an "inordinate

16

amount of standing or walking, as well as an ability to move the limbs quickly" [Doc. 16 at Page ID # 428]. Conclusory claims of error without further argument or authority may be considered waived. *Woods*, 2009 WL 3153153, at *7. Even considering the merits of Plaintiff's argument, however, it cannot stand. The VE testified that the Dictionary of Occupational Titles does not include information regarding sit/stand options, and his testimony was based on his own observations of the referenced jobs and on his own interviews with people who performed these jobs (Tr. 41).

Accordingly, I **FIND** that the ALJ's conclusion that jobs exist in significant numbers in the national economy was supported by substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[7] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 15] be **DENIED**.

2) The Commissioner's motion for summary judgment [Doc. 19] be **GRANTED**.

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 & n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).